IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Greater Rockford Airport Authority, | |
| Plaintiff, | Case No.: 3:24-cv-50398 |
| v. | Judge Iain D. Johnston |
| Schenker, Inc., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Greater Rockford Airport Authority ("the Airport") sued Defendant Schenker, Inc. ("Schenker"), alleging breach of contract. Schenker moved to dismiss under F.R.C.P. Rule 12(b)(6). For the reasons below, the Court denies Schenker's Motion.

**Background**

The Court takes the following allegations from the Airport's Complaint (and in a few instances its Response) and accepts them as true to decide this Motion.

The Airport owns a building and some surrounding land (together, the "Premises") in Rockford, Illinois. Dkt. 1, Ex. A, ¶ 4.[1] In April 2021, the Airport leased the Premises to non-party Emery Cargo Properties, LLC ("Emery"). *Id.* ¶ 5. A few months later, Emery, in turn, subleased the Premises to Schenker. [2] *Id.* ¶ 6. The

---

[1] Citations to "Dkt. 1, Ex. A" refers to the Airport's state court complaint, which Schenker removed.
[2] Technically it's the "Subleased Premises," because apparently Emery leased less than the entire property, but that's irrelevant to decide this Motion.

1

Airport's Lease to Emery was set to expire in March 2028, and Emery's Sublease to Schenker was to expire in 2027.

Schenker's Sublease required it to timely pay Emery (not the Airport) rent and other fees. *Id.* ¶ 7. The Sublease also stated that "[i]f the lease shall be terminated prior to the Expiration Date of this Sublease, this Sublease shall thereupon be terminated." Dkt. 1, Ex. B; dkt. 12, pg. 2. The Sublease didn't prevent Emery from assigning its Sublease, nor did it require Emery to obtain Schenker's permission. Dkt. 1 ¶ 16; dkt. 14, pg. 6.

Emery stopped paying its rent to the Airport in May 2023. Dkt. 1 ¶ 9. After Emery missed months of payment, the Airport notified Emery that it was in default. *Id.* On November 1, 2023, Emery and the Airport signed a Termination Agreement. *Id.* ¶ 10. In that agreement, Emery assigned its Sublease with Schenker to the Airport, "Effective [on the] Date hereof," *id.* ¶ 13, and the Airport's assumed Emery's obligations. *Id.* ¶ 14.

A few weeks later, the Airport notified Schenker about the Assignment. *Id.* ¶ 15. Schenker acknowledged the emailed notice.[3] *Id.* Schenker paid rent to the Airport from January through May 2024. Dkt. 14, pg. 8 (citing dkt. 1, Ex. I). On February 27, 2024, the Airport received an email from Schenker, informing the Airport that Schenker wished to terminate the Assigned Sublease effective March 31,

---

[3] Schenker says "[the Airport] alleges that Schenker 'promptly acknowledged' receipt of the letter. Yet [the Airport] does not specify what it is referring to." Dkt. 12, pg. 3. That's immaterial because, at the motion to dismiss stage, the Court considers the allegations true.

2

2024.[4] *Id.* ¶ 17. The Airport's attorneys responded, advising Schenker that it couldn't unilaterally terminate the Assigned Sublease before it expired. *Id.* ¶ 18.

At some point "thereafter," Schenker voluntarily "vacated" the Premises. *Id.* ¶ 19. Because Schenker paid rent through May, the Court presumes it vacated sometime in June. The Airport says Schenker missed June, July, and August 2024 rent payments. *Id.* The Airport demanded payment consistent with the Assigned Sublease, but Schenker hasn't paid. *Id.* ¶ 21.

The Airport sued Schenker in Winnebago County court on August 21, 2024. Defendant removed the case to this Court on September 26, 2024. It moved to dismiss on October 31, 2024.

**Analysis**

    a.    *12(b)(6) Standard*

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a "short and plain statement" establishing the basis for the claim. Fed R. Civ. P 8(a). A plaintiff will survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations.

---

[4] According to the Airport, the email was dated January 31, 2024. The Court isn't sure what it means to "receive" an email a month later.

*Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). "Courts are reluctant to construe contracts at the motion to dismiss stage, especially if the contract language is ambiguous." *Wabash Castings, Inc. v. Fuji Mach. Am. Corp.*, No. 16-c-3629, U.S. Dist. LEXIS 150107, at *8 (N.D. Ill. Oct. 31, 2016).

Documents attached to pleadings are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). So, when ruling on a motion to dismiss, a court "consider[s] documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir.2010) (cleaned up). When sitting in diversity, federal courts apply state substantive law. *Reynolds v. Lyman*, 903 F.3d 693, 695 (7th Cir. 2018).

    b.    *Breach of Contract*

Under Illinois law a plaintiff establishes a breach of contract claim when it shows (1) the existence of a valid and enforceable contract, (2) plaintiff's substantial performance, (3) defendant's breach, and (4) resulting damages. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).

The main issue in this case is whether the Airport sufficiently alleges it had an enforceable contract with Schenker. Schenker cites one clause in its Sublease with Emery, requiring that "[i]f the lease shall be terminated prior to the Expiration Date of this Sublease, this Sublease shall thereupon be terminated." Schenker then concludes the Sublease terminated when the Airport ended its contract with Emery. The Airport argues that Emery validly assigned the Sublease to the Airport before or simultaneously with the termination, so the Sublease remains enforceable.

4

A lease is a contract, so courts evaluate leases consistent with ordinary contract interpretation rules. *Urb. Sites of Chicago, LLC v. Crown Castle USA*, 979 N.E.2d 480, 489 (Ill. App. Ct. 2012) (citing *Midland Mgmt. Co., v. Helgason*, 630 N.E.2d 836, 840 (Ill. 1994). "In contract interpretation, the primary goal is to give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms." *Midway Park Saver v. Sarco Putty Co.*, 976 N.E.2d 1063, 1070 (Ill. App. Ct. 2012). Illinois observes the "four-corner" rule, so if a contract's language is "facially unambiguous," courts interpret it as a matter of law, without relying on parol evidence. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882 (Ill. 1999). Contracts must be construed as a whole, viewing particular terms or provisions in the context of the entire agreement. *Matthews v. Chicago Transit Authority*, 51 N.E.3d 753, 776 (Ill. 2016).

Excising a sentence in the Sublease, Schenker tries making this case sound simple: the Lease was terminated, Schenker notes, so the Sublease terminated as well. Ergo, the Airport loses. The Court isn't convinced. First, it's not clear that "terminated" carries the usual meaning in this situation. As the Airport highlights, another section in the Sublease unconditionally allowed Emery to assign its rights to other entities. Emery exercised that right when it finalized the Termination Agreement with the Airport, assigning it "any and all [of Emery's] existing leases." So, any "termination" occurred simultaneously with the Sublease's valid assignment, and in that sense *some* lease remained. It's therefore plausible the Airport never triggered the termination clause. Regardless, as the Airport contends, it makes no

5

sense that the sublease would freely permit assignment, so long as the assignment wasn't to the original leaseholder in exchange for termination.

Schenker further invokes the general rule that "termination of a [] top lease ipso facto works a termination of a sublease." *Arendt v. Lakeview Cts. Assocs.*, 366 N.E.2d 1096 (Ill. App. Ct. 1977). The Sublease essentially codifies that rule, but Schenker cites the common law doctrine for extra support. In any event, the Airport compellingly argues that such rules are meant to protect the sublessor—not the sublessee—in the event the lessor terminates the original lease. Further, citing *Kallman v. RadioShack Corp.*, 315 F. 3d 731, 737 (7th Cir. 2002), the Airport argues that such rules don't apply when the terminations account for subtenants. In this case, the Airport assumed Emery's responsibilities to Schenker. Schenker's efforts to distinguish *Kallman*—in that those subtenants happened to be *parties* to the new agreement—are unpersuasive.

Schenker's (relatively) stronger argument is that Emery "assigned" the Sublease *after* the Airport already terminated the Lease. Dkt. 16, pg. 4. Because Emery couldn't assign what it no longer had, Schenker argues, Emery's "assignment" was invalid. The Airport argues (and the Termination Agreement shows) both the termination and the assignment happened on the same date. Maybe Schenker has some basis for its position, but that's irrelevant at this stage; the Court must accept *the Airport*'s version as true, not Schenker's. Under these circumstances, Schenker hasn't demonstrated that the Airport's claim is legally insufficient.

    c.    *Attornment*

6

Alternatively, the Airport argues that it has a breach of contract claim under an attornment theory. "An attornment is a continuation of the existing lease under the same conditions and continues the landlord-tenant relationship under the term of the original tenancy." *Coleman v. Madison Two Assocs.*, 718 N.E.2d 668, 677 (Ill. App. Ct. 1999) (citations omitted). The Court already found that the Airport survived Schenker's Motion under the Sublease, so it's unnecessary to decide the attornment question. Nevertheless, the Airport plausibly contends that, in receiving the Airport's notification, paying rent for at least four months, and remaining on the Premises, Schenker voluntarily continued the original lease. To the extent the Court understands correctly, Schenker argues in Reply that attornment can't "reanimate[] a terminated lease;" instead, Schenker's a "hold-over" tenant at best. It's not clear why the latter status would categorically defeat the Airport's breach of contract claim, but in any event the Court finds the Airport plausibly alleges breach under an attornment theory, too.

**Conclusion**

For the above reasons, the Court denies Schenker's Motion.

Entered: March 12, 2025            By:_____
                                       Iain D. Johnston
                                       U.S. District Judge